851 F.Supp. 1389 (1994)
MINNESOTA MILK PRODUCERS ASSOCIATION, a non-profit Minnesota corporation, individually, on behalf of themselves and others similarly situated; Bill Dropik, individually, on behalf of himself and others similarly situated; Chester Kolstad, individually, on behalf of himself and others similarly situated; Greg Radermacher, individually, on behalf of himself and others similarly situated; Arnold Ness, individually, on behalf of himself and others similarly situated; Fredrick J. Bianchi, individually, on behalf of himself and others similarly situated; Marlon Restad, individually, on behalf of himself and others similarly situated; Delbert Mandelko, individually, on behalf of himself and others similarly situated; John Fischer, individually, on behalf of himself and others similarly situated; Lee Johnston, individually, *1390 on behalf of himself and others similarly situated; Leslie Kyllo, individually, on behalf of himself and others similarly situated; James Muzzy, individually, on behalf of himself and others similarly situated, Plaintiff,
v.
Clayton YEUTTER, Secretary, United States Department of Agriculture, Defendant,
Minnesota, State of; Wisconsin, State of; Iowa Department of Agriculture and Land Stewardship; Iowa Dairy Products Association; North Dakota, State of; Iowa, State of, Amicus.
Civ. No. 4-90-31.
United States District Court, D. Minnesota, Fourth Division.
April 13, 1994.
Lynn Ann Hayes, Patricia A. Jensen, Eric N. Olsen, Farmers Legal Action Group, St. Paul, MN, James T. Massey, Farmers Legal Action Group Inc., Sisters, OR, for plaintiffs MN Milk Producers Ass'n, Bill Dropik, Chester Kolstad, Greg Radermacher, Arnold Ness, Fredrick J. Bianchi, Marlon Restad, Delbert Mandelko, John Fischer, Lee Johnston, Leslie Kyllo and James Muzzy, individually and others similarly situated.
Mary Jean Atmore, Robert Michael Small, U.S. Atty. Office, Minneapolis, MN, Stephen *1391 E. Hart, Herbert E. Forrest, U.S. Dept. of Justice, Civ. Div., Washington, DC, Thomas Millet, Lois Bonsal Osler, U.S. Dept. of Justice, Washington, DC, for defendant Clayton Yeutter, Secretary, U.S. Dept. of Agr.
Scott Ray Strand, MN Atty. Gen., St. Paul, MN, for amicus curiae State of MN.
Scott Ray Strand, MN Atty. Gen., St. Paul, MN, Bruce A. Craig, WI Dept. of Justice, Madison, WI, for amicus curiae State of WI.
Scott Ray Strand, MN Atty. Gen., St. Paul, MN, Timothy D. Benton, IA Dept. of Justice, Des Moines, IA, for amicus curiae IA Dept. of Agr. and Land Stewardship.
Mark E. Truesdell, Beving Swanson & Forrest, Des Moines, IA, William Lee Oemichen, MN Dept. of Agriculture Dept. Counsel, St. Paul, MN, for amicus curiae IA Dairy Products Ass'n.
Nicholas John Spaeth, ND Atty. Gen., Bismarck, ND, for amicus curiae State of ND.
Timothy D. Benton, IA Dept. of Justice, Des Moines, IA, David R. Sheridan, for amicus curiae State of IA.

MEMORANDUM OPINION AND ORDER
DIANA E. MURPHY, Chief Judge.
In this action the Minnesota Milk Producers Association (MMPA) and its elected directors, all family dairy farmers, seek a declaration that the milk marketing orders promulgated by defendant United States Department of Agriculture (USDA) for all areas east of the Rocky Mountains are in violation of the Agricultural Marketing Agreement Act of 1937 (the AMAA), 7 U.S.C. §§ 601-24. Before the court are cross motions for summary judgment.

I.
Federal milk marketing orders grew out of the need to help milk producers achieve and maintain some bargaining power over the prices they received for their product. Several characteristics of the industry cause an inherent instability in milk marketing and producer bargaining power. Milk is bulky and must be moved promptly to market. Because it is produced every day, farmers must continue to ship it even when market prices are not satisfactory. Federal milk orders are designed to promote orderly marketing conditions by defining the terms of purchase between producers and handlers of milk in a specified area. See, The Federal Milk Marketing Order Program, USDA, Agricultural Marketing Service, Marketing Bulletin No. 27.
This case has a somewhat involved procedural background. After the original complaint was dismissed for lack of standing, the Court of Appeals reversed and remanded,[1] holding plaintiffs' claims actionable under the AMAA. After remand, defendant's motion for a stay was granted to allow the Secretary time to issue a final decision in an ongoing administrative proceeding addressing certain provisions of federal milk marketing orders (pricing of Class I and reconstituted milk[2]).
Under the current system, grade A milk is divided into three Classes: I, II, and III. Class I is fluid milk for consumption, and it has the highest price. Class II is milk used in soft dairy products like yogurt, ice cream, and cottage cheese; its price is slightly lower. Class III has the lowest price and generally includes milk used in storable hard manufactured products like cheese, butter, nonfat dry milk, and evaporated milk.
Under § 608c(5) of the AMAA, dairy producers are required to be paid the same price regardless of the ultimate use of their milk. This is accomplished through the "blend price". The blend price is a weighted average value of the milk distributed in the marketing area. The higher the percentage of fluid or Class I use in the marketing area, the higher the blend price.
The prices for the various classes are set according to formulas. The base price for all the formulas is the "M-W price", which is the average price paid per hundredweight for Grade B manufacturing milk in Minnesota and Wisconsin.[3] The Class III price equals *1392 the M-W price. The Class II price is the M-W price plus a Class II differential of approximately 10 cents per hundredweight. The Class I price is the M-W price plus a fixed dollar amount called the Class I differential. Class I differentials are different for each marketing order. The Class I differentials range from $1.20 per hundredweight in Minneapolis to well over $4.00 in some southern states. In general, the Class I differentials increase with the marketing area's distance from Eau Claire, WI, the center of the traditional milk-producing region.
Administrative hearings began in April, 1990, and were convened at several locations over 43 days, with testimony from over 200 witnesses. After a recommended decision was issued on November 22, 1991, exceptions were submitted and considered. The final decision issued on March 5, 1993. It made no changes to the Class I pricing system, but did make substantial changes to the reconstituted milk provisions.[4] The USDA conducted the required referenda and polling[5] in the 40 areas affected by the amended marketing orders changing the reconstituted milk provisions, and the order affecting Minnesota producers was ratified.
Plaintiffs' challenge in this case is now focused on the system for fixing Class I fluid milk prices in all milk marketing orders east of the Rocky Mountains. These provisions were left unchanged by the final decision. Plaintiffs do not ask the court to adopt any of the over 35 specific proposals for changing the Class I pricing system suggested during the administrative hearings. Rather, plaintiffs ask the court to rule that the Secretary's decision to maintain the existing system is unlawful.
Plaintiffs seek the following relief: 1) a declaration that the existing Class I pricing system is unlawful because it violates the requirements of the AMAA; 2) an order to the Secretary of Agriculture to convene administrative hearings within 60 days to take evidence on proposals to amend the Class I system; and 3) an order to the Secretary to issue a final decision on such new proceeding and hold any necessary referenda on amended orders within 9 months of the order.

II.
Plaintiffs argue that the proper standard of review for the Secretary's interpretation of the AMAA is found in Chevron U.S.A., Inc. v. Natural Resource Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984). The statute must first be examined to determine if Congress has spoken to the precise question at issue. "If the intent of Congress is clear, that is the end of the matter; for the court as well as the agency must give effect to the unambiguously expressed intent of Congress." Id. at 842-43, 104 S.Ct. at 2781. If the intent of Congress is not clear on the face of the statute, the question is "whether the agency's [interpretation] is based on a permissible construction of the statute." Id.
Plaintiffs argue that the agency's final decision regarding Class I milk prices should be rejected under the first step of the Chevron analysis. The decision violates clear Congressional intent that prices set by the milk orders ensure producers share equally the benefits of the high Class I price and the burdens of the lower surplus milk price. Furthermore, they argue the final decision does not provide a reasonable interpretation of order prices under the AMAA as applied to today's dairy industry. It is not reasonable because it fails to explain how the agency decided that Class I prices reflect feed costs and other economic conditions that affect supply and demand or how Class I prices serve the public interest. They claim the decision also ignores relevant factors relating to the availability and adequacy of milk supplies and comes to illogical conclusions.
Plaintiffs argue Congress expressed clear standards in 7 U.S.C. § 608c for pricing milk under the federal milk orders. That section sets out the scope, establishment and operation of federal orders. Two of the most important parts are §§ 608c(5) and (18). Subsection 608c(5) establishes the concept of sharing the benefits and burdens of Class III *1393 and Class I prices through the blend price. Subsection 608c(18) sets out the pricing criteria to be used by the Secretary. Under § 608c(18) minimum prices must:
[R]eflect the price of feeds, the available supplies of feeds, and other economic conditions which affect market supply and demand for milk or its products in the marketing area to which the contemplated marketing ... order ... relates; ... insure a sufficient quantity of pure and wholesome milk to meet current needs and further to ensure a level of farm income adequate to maintain productive capacity sufficient to meet anticipated future needs, and be in the public interest.
7 U.S.C. § 608c(18).
Plaintiffs argue that under the current system, Minnesota producers share the burdens of the lower Class III price through the M-W price, but do not share the benefits of the higher Class I price. They claim that the more production exceeds Class I fluid requirements, the more surplus milk there is. Surplus milk is used in manufacturing. This overabundance of manufacturing milk drives down the M-W price, which in turn drives down the prices for all classes of milk through the pricing formulas. Thus, all producers in all marketing orders share the burdens of over-production through lower blend prices.
Plaintiffs contend they do not share the benefits of the higher Class I price. This is because the Class I formula is the M-W price plus a fixed dollar amount that is different for all areas. While areas with a high Class I differential share the burden of lower M-W prices when there is overproduction, this is offset by their high Class I differential. Producers in traditional dairy producing areas do not enjoy the offset of a high Class I differential, and thus do not share the benefits of the higher Class I prices.
Plaintiffs also argue that the Secretary's interpretation of the AMAA is unreasonable. The higher Class I differentials in non-dairy producing areas were originally designed to create incentives for production in those areas to ensure an adequate daily supply of fluid milk everywhere. Plaintiffs argue that in his final decision, the Secretary rejected the original basis for the Class I differentials, which was to reflect the cost of acquiring alternative supplies of milk from outside the order's marketing area. This is why the differentials were set up to increase with distance from the traditional dairy-producing region. The Secretary expressly states in his final decision that the differentials are no longer meant to reflect the cost of transportation and that it is erroneous to consider the pricing structure a "single-basing-point" system (i.e. based on distance from Eau Claire, WI). Plaintiffs believe that the Secretary has acted unreasonably because he has rejected the prior basis for the pricing structure, but he has not articulated a new justification for retaining it.
Plaintiffs also argue that the final order is not a reasonable or permissible interpretation of the AMAA because the Secretary has failed to address any of the factors listed in § 608c(18) regarding economic factors affecting supply and demand, costs of feed, or how retaining the current system is in the public interest. To demonstrate reasoned decision making the Secretary must describe which market-specific economic conditions affecting supply and demand are reflected in the individual market's Class I differential.
Finally, plaintiffs contend the Secretary's decision was unreasonable because it was based solely on an analysis of the supply of milk within each marketing area and did not consider supplies available nationally outside the local production area. By doing this the Secretary ignored basic tenets of today's dairy industry and neglected to adapt the pricing structure to current conditions as mandated by the AMAA. Plaintiffs also argue this exclusively local analysis produced absurd results. USDA analyzed local supplies in all the milk order marketing areas and grouped the areas into three categories: deficit areas (areas where local production did not always meet Class I fluid needs), surplus areas (areas where local production exceeded Class I fluid needs), and balanced areas (areas where local production was in balance with demand for Class I fluid milk). According to USDA's own groupings, 19 of the 40 orders analyzed were in groups 1 and 2. In other words, 47.5% of all the marketing order areas did not exhibit a balance between supply and demand for Class I fluid *1394 milk. Plaintiffs argue there is no rational connection between finding 47.5% of the markets are out of balance and the conclusion that prices do not have to be adjusted.
The strictly local analysis of supply also ignores the fact that there is a national surplus of milk. Under the local analysis adopted by the USDA, high Class I differentials will be maintained to stimulate production in deficit areas. This will occur despite the fact that surpluses exist in other areas, and modern transportation could be used to satisfy the demand in deficit areas. Excess production will further erode the M-W price and drive producers in the low differential areas, (traditional Midwest dairy producer areas) out of business. Plaintiffs claim a stimulation of production is contrary to Congressional recognition of a national surplus and Congressional actions such as herd buy-out programs instituted to cut milk production.[6]
Defendant responds that the proper standard for review in this case is the arbitrary or capricious standard of the Administrative Procedure Act. Under this standard an administrative agency's decision is afforded much deference, especially when the decision involves technical matters within the agency's area of expertise. Defendant argues that the milk pricing structure is highly technical and that plaintiffs bear a heavy burden of proof to show that the final decision was arbitrary or capricious. Here the USDA compiled a lengthy administrative record and conducted a systematic analysis of milk supplies in 40 marketing areas, and then concluded that the present structure is reasonably adequate to effectuate the purposes of the AMAA. Plaintiffs may not like or agree with this conclusion, but they cannot show that it was not rational or without support in the administrative record.
Defendant argues that also under Chevron its final decision to retain the current Class I pricing structure should be upheld. Its decision is consistent with the clear intent of Congress and should be upheld under the first prong of the Chevron test. Plaintiffs are wrong in their contention that the AMAA requires benefits and burdens of the pricing structure be shared throughout the federal milk order system. On the contrary, the AMAA requires only that benefits and burdens be shared equally by producers within a given marketing order. In other words, analysis of the milk orders is intra-order, rather than inter-order. Defendant believes this argument is supported by the text of § 608c(5)(B). That statutory section contains the blend price provisions which state each marketing order shall ensure:
the payment to all producers and associations of producers delivering milk to the same handler of uniform prices for all milk delivered by them ... (emphasis added).
In addition, the ratification requirements of the AMAA are specifically intra-order. Defendant argues that if benefits and burdens of the pricing structure were to be shared across all orders, it would be logical to assume the statutory procedures would allow producers from all orders to vote on the ratification of the price structure in any given order. This, however, is not the case. The AMAA requires that a marketing order must be approved by a specified percentage of the producers regulated by that order. 7 U.S.C. §§ 608c(9). The lack of provision in the statute for cross-over voting is further support for the agency's interpretation that blend prices must only share benefits and burdens within the particular marketing order. Defendant also points out that nothing in the statute directs him to ensure that all producers in all regions enjoy the same level of profit.
The Secretary argues prior judicial interpretations of the AMAA support its position that Congress intended prices to be analyzed on an intra-order basis. Plaintiffs cited Block v. Community Nutrition Institute, 467 U.S. 340, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984), for the proposition that the burden of surplus milk is to be shared among all producers, but Block relies on Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934) as support. At one point in the latter case the Court stated:
[a] satisfactory stabilization of prices for fluid milk requires that the burden of surplus *1395 milk be shared equally by all producers and all distributors in the milkshed.

Id. at 517-18, 54 S.Ct. at 507 (emphasis added). Defendant believes this statement recognizes that Congress created a local, rather than national, scheme for sharing Class I and Class III prices.
Finally, defendant argues that Congress' intent to have prices analyzed within the individual orders was confirmed in 1985 when it amended the AMAA through the Food Security Act of 1985. Public Law 99-198. In that legislation Congress specifically retained the current Class I differential system and increased the differentials by varying amounts in all the marketing orders. The Secretary argues that if Congress had intended the benefits and burdens of Class I pricing to be shared equally throughout the country, it would not have retained the decades-old local ratification and polling scheme and would not have made varying, market-specific increases to the Class I differentials.
Defendant also contends that even if the legislative intent were ambiguous, its interpretation should be upheld because it is a rational interpretation. Congress, not the USDA, established the current Class I pricing structure through the Food Security Act of 1985. After proper analysis of the various marketing orders, the Secretary rationally determined that the current differentials were ensuring an adequate supply of fluid milk. Only a few orders experienced periodic deficits, and only chronically surplus markets  like Minnesota  were overproducing milk relative to demand.
Defendant defends the USDA supply analysis as rational. It chose to analyze supply by examining "producer milk". Producer milk is a term that is defined by each marketing order and basically represents all milk pooled in a marketing order. It does not reflect the entire quantity of milk from outside the marketing area that is potentially available to serve the fluid needs of the marketing area. The decision to use producer milk in the supply analysis of each marketing order was rational. Although some milk is transferred between markets, there appeared to be no available method for measuring this milk. There was therefore no available national supply and demand standard for the order program as a whole. He argues additionally that the supply and demand provisions of the AMAA require Class I prices be set for each order on an individual basis. Viewed from this individual perspective, and lacking a national supply demand standard, defendant rationally chose to use producer milk in its analysis. The Secretary argues that while plaintiffs may disagree with this choice, they cannot seriously argue that he did not rationally consider this issue.
As for plaintiffs' argument that the Secretary did not specifically address the economic conditions and other factors listed in § 608c(18), defendant argues that these factors only become relevant if the Secretary determines that prices have to be changed. After the USDA's supply and demand analysis of the various marketing orders, the Secretary determined that the current system was adequate. He argues that he therefore did not have to make specific findings about the § 608c(18) factors. These factors had already been considered by Congress when it established the current Class I differentials in the Food Security Act of 1985.[7]

III.
Review of an agency's construction of a statute requires a two part analysis. If Congress has spoken to the precise issue, its intent must be given effect. Chevron U.S.A., Inc. v. Natural Resource Defense Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984); Sierra Club v. Davies, 955 F.2d 1188, 1193 (8th Cir.1992). If Congress has not spoken directly to the issue, the question is whether the agency's construction is permissible. Id.
Plaintiffs argue the interpretation of the AMAA embodied in the Secretary's *1396 final decision is contrary to the expressed intent of Congress because it maintains a Class I pricing structure that does not share the benefits of the higher Class I prices across all producers who bear the burden of lower Class III prices. They contend this Congressional intent for burden sharing is reflected in 7 U.S.C. § 608c(5) and (18).
This argument does not find textual support in the AMAA. The section of the AMAA which requires burdens and benefits be shared through blend prices speaks in local, not national terms. Under § 608c(5)(B), milk orders must provide:
for the payment to all producers and associations of producers delivering milk to the same handler of uniform prices for all milk delivered by them ... (emphasis added)
This statutory language is contrary to plaintiffs' assertion that the Secretary must look outside the marketing order when determining the blend price. A local or intra-order perspective is also consistent with the producer approval provisions of the AMAA. Under § 608c(9), each marketing order must be approved by a specified percentage of producers regulated by that order. If Congress intended the Secretary to look outside the local order when establishing blend price provisions, it would have likely permitted producers to have some voice in approving the terms of orders besides their own.
Other sections of the AMAA provide additional textual support for a local perspective. For example, § 608c(11)(C) directs the Secretary to issue orders to individual production and marketing areas that recognize local differences in the production and marketing conditions of the areas.[8] The AMAA also restricts the Secretary's use of nationwide order provisions to only those situations where a regional order or orders "would not effectively carry out the declared policy of this chapter." 7 U.S.C. § 608c(11)(A). When viewed together, the cited portions of the AMAA lead to the conclusion that Congress did not require the Secretary to share blend prices across all producers who may be burdened by lower Class III prices, but rather directed the Secretary to establish a system which provides uniform prices for milk within each marketing order.[9]

IV.
Plaintiffs also challenge the application of the AMAA in the Secretary's final decision under the Administrative Procedures Act (APA), 5 U.S.C. § 701 et seq. Plaintiffs argue that the Secretary's final decision was arbitrary, capricious, and not supported by substantial evidence.
In deciding whether an agency decision was arbitrary and capricious, "the reviewing court must determine whether the decision was based on the relevant factors and whether there has been a clear error of judgment." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). The scope of review is a narrow one and the court should not substitute its judgment for that of the agency. Motor Vehicle Mfrs. Association v. State Farm Mutual, 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983).
Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision which runs contrary to the evidence before the agency, or is so implausible that it *1397 could not be ascribed to a difference in view or the product of agency expertise.
Id.
As stated earlier, the AMAA requires the Secretary to establish a Class I pricing system that takes into account local marketing and production factors. Under § 608c(18), prices:

shall ... be adjusted to reflect the price of feeds, the available supplies of feeds, and other economic conditions which affect the supply and demand for milk or its products in the marketing area to which the contemplated marketing agreement, order, or amendment relates. Whenever the Secretary finds, upon the basis of the evidence adduced at the hearing required by section 608b of this title or this section, as the case may be, that parity prices of such commodities are not reasonable in view of the price of feeds, the available supplies of feeds, and other economic conditions which affect market supply and demand for milk and its products in the marketing area to which the contemplated agreement, order, or amendment relates, he shall fix such prices as he finds will reflect such factors, insure a sufficient quantity of pure and wholesome milk to meet current needs and further to assure a level of farm income adequate to maintain productive capacity sufficient to meet anticipated future needs, and be in the public interest.
7 U.S.C. § 608c(18) (emphasis added).
Plaintiffs argue the final decision is flawed because it does not reflect consideration of all the factors required under the AMAA. The Secretary focused solely on supply and demand say plaintiffs, and made no mention of how the Class I differentials reflect the price and availability of feeds, economic conditions affecting supply and demand, or the public interest. The final decision rejects the single basing point rationale previously asserted as the basis for the Class I differentials, but does not articulate a new justification. Even the Secretary's supply and demand analysis was flawed, because it failed to consider factors the USDA had earlier stated were important to such a evaluation.
The Secretary admits to not considering the specific factors in § 608c(18), and makes several arguments why it was not necessary to do so. The Secretary argues that he did not have to consider the § 608c(18) factors because they do not become relevant until the Secretary decides that the differentials must be changed. The Secretary, however, is obligated by the statute to adjust the differentials:

Whenever the Secretary finds ... that parity prices of such commodities are not reasonable in view of the price of feeds, the available supplies of feeds, and other economic conditions which affect market supply and demand for milk and its products in the marketing area ...
§ 608c(18) (emphasis added). The Secretary therefore cannot reasonably determine that the Class I system does not have to be changed without examining the factors which the prices are required to reflect.
The Secretary also argues that he did not have to consider the § 608c(18) factors because Congress already considered them when it passed the Food Security Act of 1985. The 1985 Act amended § 608c(5) and adjusted the Class I differentials. The Act required the amended levels to remain in place for two years, after which they could be amended by the Secretary. The Secretary argues that his decision to retain the same Class I differentials established by Congress in 1985 conforms to the requirements of § 608c(18) because Congress previously evaluated the required criteria.
One of the few things the parties agree on is that the dairy industry continues to change. Part of the Secretary's duty under the AMAA is to adapt milk marketing orders to changing conditions. See e.g., § 608c(16)(A) (authorizing Secretary to terminate any provision that no longer effectuates the purposes of the Act); § 608c(3) (requiring the Secretary to hold hearing whenever he has reason to believe the issuance of an order will effectuate the purposes of the Act); § 608c(5)(A) (authorizing amendment to the differentials set by the Food Security Act after two years); and § 608c(18) (prices must be adjusted "whenever" listed criteria not reflected). The fact that in 1985 Congress considered the statutory factors (including supply and demand, economic, production, and marketing information) does not assure that these findings are still valid almost ten years later.
*1398 The Secretary's decision to retain the existing Class I pricing structure is tantamount to a finding that it continues to satisfy the requirements of the AMAA as set out in § 608c(18). This conclusion may or may not be supported by substantial evidence from the administrative hearing, but since explicit findings and explanations were not issued relative to the 608c(18) factors, the court is unable to make that determination. Because the Secretary failed to indicate consideration of factors required by the plain language of the AMAA, the final decision is arbitrary and capricious and further consideration by the agency is required. See, Motor Vehicle Mfrs. Association v. State Farm Mutual, 463 U.S. 29, 46, 103 S.Ct. 2856, 2868, 77 L.Ed.2d 443 (1983) (finding National Highway Traffic Safety Administration decision to revoke safety requirement arbitrary and capricious and remanding to agency for further consideration). The court takes no position at this time on whether the Class I system must be amended, but observes that the Secretary's final decision does not provide sufficient explanation so that it may be determined if it meets the requirements of the AMAA. Under these circumstances, remand to the Secretary for additional findings of fact and explanation is appropriate.[10]
After a supplemental decision is issued, plaintiffs may or may not choose to continue their challenge under the AMAA. If they do, the court will then have to examine the supplemental decision in light of the requirements of the AMAA. The court will consider the Secretary's findings on the required factors, and if the Secretary continues to rely on the supply and demand analysis of producer milk, further explanation of his reasoning behind this choice would be helpful as well.
The final decision of March 5, 1993 is based on an analysis of producer milk which did not consider milk supplies available outside the marketing area. In addressing an objection to this analysis, the final order recognizes the potential impact of outside milk supplies, but ultimately does not consider them:
That is not to say that a regulated market cannot rely on milk supplies from another area, as is often the case. Nevertheless, viewed on an individual market basis, we reaffirm our conclusion that milk supplies available for class I and Class II uses are adequate, but not excessive in most markets.
Final Decision at p. 12648. This statement is troubling because earlier publications issued by the USDA indicate that national supply and demand is an important factor influencing Class I prices. In Marketing Bulletin 27, the USDA stated:
Class I prices are viewed as a coordinated system of prices for the various markets wherein the major factor moving prices up or down is the national supply-demand situation.
Marketing Bulletin 27 at p. 34 (1981 revised edition, updated January 1989) (attached as Plaintiffs' Exhibit to its Memorandum in Support of Summary Judgement). It goes on to state:
More than any time in the past, achieving a balance between supply and demand requires establishing a structure of prices which recognizes the sum total of forces affecting the national supply and demand for milk for fluid and manufacturing uses.
Id. at 36.
Under § 608c(18), Class I prices shall reflect the price and available supplies of feeds, and other economic conditions "which affect market supply and demand for milk and its products" in the marketing area. Availability of national supplies could be a factor to consider when examining the marketing conditions within any particular order. The Secretary acknowledged as much in Marketing Bulletin 27. The final decision did not consider national supplies, yet the Secretary dismissed an objection on this point with little discussion, saying that no national supply and demand standard exists.[11] This appears *1399 contrary to several statements in Marketing Bulletin 27 which suggest the M-W price is a national standard.[12] The apparent inconsistency between the final decision and other USDA publications is thus an area of possible concern.
The Secretary's statutory interpretation of the AMAA as only requiring uniform prices within each marketing order is reasonable and not contrary to an expressed intent of Congress. See, Section III, supra. The Secretary's final decision, however, is arbitrary and capricious because he admittedly failed to consider the factors listed in § 608c(18), as required by the plain language of the statute.
Under the circumstances presented, this matter should be remanded to the Secretary for a period of 120 days so that the Secretary may conduct any hearings or other proceedings necessary to the issuance of a decision more fully explaining his conclusions in light of this opinion. By the end of the period of remand the Secretary shall file his amplified decision with the court and serve copies on plaintiffs. The Secretary shall promptly notify the court and opposing counsel if any regulatory requirements would affect this deadline. Issuance of an amplified decision will put the parties in a position to address the final disposition of this case and to file any motions necessary to that end.

ORDER
Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:
1) defendant's motion for summary judgment is granted in part and denied in part. It is granted with respect to his interpretation of the AMAA as reasonable and not contrary to the expressed intent of Congress, but denied with respect to the sufficiency of his final decision;
2) plaintiffs' motion for summary judgment is denied in part and granted in part. It is denied with respect to the Secretary's interpretation of the AMAA, but granted with respect to the final decision of the Secretary. The final decision is declared arbitrary and capricious with respect to the proposed amendments to the Class I pricing scheme of the federal milk marketing orders; and
3) the final decision is remanded to the Secretary of Agriculture for 120 days, during which time he may conduct any necessary hearings or other proceedings and then shall issue an amplified decision consistent with this opinion setting forth findings of fact and explanations for his conclusions regarding proposed amendments to the Class I pricing provisions of the federal milk marketing orders.
NOTES
[1] Minnesota Milk Producers Association et al., v. Madigan, 956 F.2d 816 (8th Cir.1992).
[2] Reconstituted milk is milk that is dehydrated before shipping to reduce transportation costs; water is later added at the final destination.
[3] Grade B milk is also called "manufacturing milk" and is used in the same basic ways as Class III milk.
[4] Because of the latter changes plaintiffs have withdrawn their earlier challenge to the reconstituted milk provisions.
[5] See, 7 U.S.C. §§ 608c(9), (17), (19).
[6] Beginning in April 1986, the Secretary would enter into purchase contracts with producers who chose to sell their herds for slaughter or export; the program lasted for 18 months.
[7] It their reply plaintiffs make two responses. Since a decision to maintain the prevailing system is the same as saying the prevailing system meets the requirements of § 608c(18), specific discussion of the relevant factors is required. They also argue that USDA cannot simply rely on Congressional consideration of those factors in 1985. The Secretary is under a continuing duty to adapt prices to current conditions and therefore had a duty to consider the factors in § 608c(18).
[8] § 608c(11)(C) states:

orders issued under this section which are applicable to the same commodity or product thereof shall, so far as practicable, prescribe such different terms, applicable to the different production areas and marketing areas, as the Secretary finds necessary to give due recognition to the differences in the production and marketing of such commodity or product in such areas.
[9] Even if the intent of Congress were not clear, however, the Secretary's decision to maintain the current class I system was a permissible interpretation of the statute. This is especially true in light of Congress' explicit delegation of authority to the Secretary under the AMAA and the technical nature of milk marketing orders. See, Chevron, 467 U.S. at 844-45, 104 S.Ct. at 2782-83. The agency interpretation need not be the only permissible construction, nor the reading the court would have reached if the question initially arose in a judicial proceeding. Id. at 843 n. 11, 104 S.Ct. at 2782 n. 11.
[10] The Secretary also makes an after-the-fact argument that he rejected plaintiffs' proposed amendments to the Class I system in part because of the impact of over-order payments. This argument was not made in the final decision, and "courts may not accept appellate counsel's post hoc rationalization for agency action". Motor Vehicle Mfrs. Association v. State Farm Mutual, 463 U.S. at 50, 103 S.Ct. at 2870.
[11] The final decision states: "There is no national supply and demand standard for the order program as a whole." Final Decision at p. 12648.
[12] "The M-W price is a measure of changes in supply-demand conditions throughout the country" Marketing Bulletin No. 27 at 22.

"The M-W price series reflects a price level determined by competitive conditions which are affected by supply and demand conditions throughout the dairy industry, and reflects actions taken under the dairy price support system." Id. at 34.